**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS WOMACK | : | |
| | : | |
| Appellant | : | No. 445 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 12, 2020,
in the Court of Common Pleas of Huntingdon County,
Criminal Division at No(s):  CP-31-CR-0000851-2018.

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 29, 2022**

## I.    Introduction

In this case, we must determine when Pennsylvania Rule of Criminal Procedure 600 starts to run after a defendant is originally charged with crimes, but further police investigation uncovers a much larger criminal operation, resulting in additional charges.  A lengthy police investigation led police to charge Marcus Womack with more numerous and severe drug offenses than they charged him with at his original arrest.  Eventually, the trial court dismissed the charges from Womack's original arrest under Rule 600; Womack went to trial and was convicted of nine of the subsequent charges.  On appeal, he claims those charges also should have been dismissed under Rule 600.  He

---

[*] Former Justice specially assigned to the Superior Court.

further claims that the trial court should have granted his motion to continue to retain private counsel on the morning of trial. We affirm.

## II. Procedural History

Womack was a principal in a drug trafficking organization based in Philadelphia. Since March of 2017, he sold drugs at the Huntingdon County residence of Tyler and Bobbi Martin. Womack's illegal activities in Huntingdon County led to his prosecution at two separate dockets. The Huntingdon County District Attorney (DA) prosecuted Case CP-31-CR-533-2017 (the first case), which was ultimately dismissed under Rule 600. The Office of Attorney General (OAG) prosecuted Case CP-31-CR-851-2018 (the second case), which led to Womack's convictions in this appeal.

Pennsylvania State Police Trooper Andrew Corl had been investigating drug sales and drug activity in Huntingdon County since late 2016. At first, Trooper Corl focused on Jesse Hamman's residence, which he investigated with trash pulls, controlled purchases by confidential informants, and a remotely accessible video camera. Trooper Corl learned from this investigation that Womack was selling drugs at the Martins' residence.

Trooper Corl arranged for three controlled purchases from Womack to a confidential informant in August and September of 2017. Based on these controlled purchases, Trooper Corl prepared a search warrant for the Martins' residence. The warrant was issued and executed on October 6, 2017. Womack and the Martins were present at the time. Womack had large

amounts of money and drugs and a stolen Ruger .22 rifle both on his person and elsewhere in the residence. Police arrested Womack.

The same day, October 6, 2017, Trooper Corl filed a criminal complaint in the first case, charging Womack with nine offenses "on or about 10/06/17."[1] All charges were held for court. Womack moved for bail, which the trial court set at $250,000.00. Womack did not post bail and thus remained in jail. The trial court appointed Attorney Lance Marshall to represent Womack.

Trooper Corl continued to investigate drug activity. The Martins and other arrestees gave information about Womack's Philadelphia organization and another drug trafficking organization based in Pittsburgh. Police executed additional search warrants. Trooper Corl reviewed data from Womack's cell phone, which had been seized during the execution of the October 6, 2017 search warrant. Based on the scope of the criminal activity revealed in the continued investigation, the DA requested OAG's assistance pursuant to the Commonwealth Attorneys Act, 71 P.S. § 732-101–732-506. OAG accepted.

From late 2017 to the summer of 2018, OAG presented evidence of the investigation to the 42nd Statewide Investigating Grand Jury. This included testimony from Trooper Corl, the Martins, and many others from Huntingdon County. It also included information from trash pulls, Womack's cell phone, and Womack's recorded jail telephone calls after his arrest.

---

[1] This complaint charged conspiracy to deliver cocaine and heroin, delivery of cocaine and heroin, possession of cocaine, heroin, marijuana, and drug paraphernalia, and persons not to possess firearms.

While their grand jury investigation was pending, OAG asked the DA to keep the first case on hold. On April 10, 2018, 186 days after his arrest, Womack moved under Rule 600(D)(2) for nominal bail. The trial court granted the motion, but Womack remained incarcerated due to a parole detainer from a previous Philadelphia case. Through September 2018, the DA repeatedly told the trial court that the first case was not ready for trial.

On October 23, 2018, the grand jury returned Presentment Number 7, describing its findings about the Philadelphia and Pittsburgh drug trafficking organizations. On October 31, 2018, Trooper Corl and Corporal Charles Schaefer filed a 28-count criminal complaint in the second case against Womack based on the presentment.[2] Womack was one of 34 individuals arrested based on the grand jury investigation. The court appointed Attorney Anthony Zanoni to represent Womack in the second case; Attorney Marshall still represented Womack in the first case. Attorney Zanoni did not appear at Womack's December 19, 2018, preliminary hearing in the second case. All 28 counts from the second complaint were held for court.

On February 13, 2019, Womack moved to dismiss the second case under Rule 600 based on the filing date of the complaint in the first case. The trial court heard the motion and then denied it on March 12, 2019.

---

[2] This complaint charged six counts of possession with intent to deliver (PWID), conspiracy to commit PWID, dealing in proceeds of unlawful activities, two counts of corrupt organizations, receiving stolen property, thirteen counts under the Uniform Firearms Act, and four counts of criminal use of a communication facility.

The next day, March 13, 2019, Womack moved to dismiss the first case under Rule 600. The trial court heard the motion and dismissed the first case with prejudice on May 9, 2019. The Commonwealth did not appeal.

Meanwhile, on March 29, 2019, OAG filed an amended criminal information in the second case, reducing the number of charges from 28 to 13 and providing separate date ranges for the four remaining PWID counts.[3]

On June 3, 2019, in lieu of scheduled jury selection, the trial court granted a motion to withdraw by Attorney Zanoni. It appointed Attorney James Best to represent Womack, then granted a defense motion to continue.

At a pre-trial conference on September 6, 2019, Womack rejected an 11-to-23-year plea offer, insisting that the second case should also have been dismissed under Rule 600. The trial court thus granted Womack's request to certify the issue for interlocutory appeal *nunc pro tunc*.[4] Rather than appeal, Womack filed an uncounseled Rule 600 motion on October 18, 2019.

_____

[3] OAG eliminated two counts of PWID, ten counts under the Uniform Firearms Act, and three counts of criminal use of a communication facility.

[4] The trial court's certification order explained:

> The Defendant is correct that no appellate court has ruled on the question of the application of Pa.R.Crim.P. 600 where an initial, active criminal case is subsumed into a subsequent, much broader grand jury presentment arising out of the same basic set of facts. . . . [N]o appellate court has ruled on whether [the rule excluding time for judicial delay] applies to delays attributable to an investigating grand jury's actions, as the investigating grand jury is an instrumentality that is initiated by and controlled by the Office of Attorney General.

Second Amended Order, 10/1/19, at 1–2.

On December 26, 2019, Womack filed a *pro se* motion to waive counsel, or for new appointed counsel, based on Womack's dissatisfaction with Attorney Best for not persisting with the same Rule 600 argument as before. Instead of holding jury selection on January 13, 2020, the trial court heard Womack's motion. Womack elected to proceed with Attorney Best. The court provided Womack 14 days to file an omnibus pre-trial motion.

Womack filed an omnibus motion on February 10, 2020, moving for a pre-trial writ of *habeas corpus* and for Rule 600 dismissal. The court held a *habeas corpus* hearing on February 10, 2020 and denied the petition on April 22, 2020. On July 16, 2020, the court held a short Zoom hearing on the Rule 600 motion. Womack spoke and insisted that the Commonwealth was trying to circumvent Rule 600 by filing two complaints based on the same criminal episode. The court denied the motion by order of August 11, 2020.

Womack's prior sentence from Philadelphia expired on August 7, 2020. Womack, who had been incarcerated since his arrest on October 6, 2017, was released on his own recognizance. He went to Philadelphia and obtained employment.

Trial was scheduled for October 8, 2020, with jury selection on September 17, 2020. The trial court held a Zoom pre-trial conference on September 14, 2020, where Attorney Best represented that Womack wanted a bench trial. The trial court ordered Womack to appear on September 17, 2020 to confirm his waiver of a jury trial. When Womack did not appear in

court on time on September 17, 2020, the trial court issued a bench warrant. The court rescinded the warrant when Womack finally arrived.

Before trial began on October 8, 2020, Womack moved for a continuance:

> MR. BEST: Your Honor, Mr. Womack is present today. He's expressed to me a desire to retain private counsel to represent him in this proceeding. Mr. Womack had been recently released from his State sentence. He's living again in Philadelphia. He's working at a slaughterhouse in that area at a salary that would be beyond what would qualify him for appointed counsel. He wants to use the services of an attorney named George Gossett, G-O-S-S-E-T-T. Mr. Gossett did speak to me on the phone yesterday. He is ready, willing and able to take Mr. Womack's case, so I think it is Mr. Womack's right to have counsel of his choice and I'm asking the Court to entertain that request.
>
> THE COURT: He certainly would have the right to counsel of his choice. You're not his first attorney, Mr. Best. We've continued this trial multiple times. In fact, as you're well aware there were Rule 600 motions because of all the continuances. This court system has bent over backwards to get this case moving. We're here now for trial. The indication that this was going to happen was just made this week, in fact, and for the record you emailed my staff, indicated that you wished to put this motion on the record and I think that was either Monday or Tuesday.
>
> The bottom line is it's too late to do that. The Commonwealth would be prejudiced as would this Court due to the efforts taken. The transport orders alone getting witnesses here, the money that has been spent in doing this. This case has been dragging on since 2018 and I attempted to count the number of continuances and scheduling notices this morning in the file and I lost count somewhere around 20. So we're going to proceed with trial.
>
> MR. BEST: Okay.
>
> THE COURT: I assume the motion is in the form of a continuance, is that right?
>
> MR. BEST: That's correct.

THE COURT: We're going to enter this order.

Now, October 8, 2020, the defense on-the-record motion for trial continuance is denied. By the Court.

N.T., 10/8/20, at 1–3.

The bench trial then proceeded, with the Commonwealth presenting 16 witnesses. The Commonwealth withdrew the charge of sale or transfer of firearms to an unlicensed person. The trial court convicted Womack of three counts of PWID, conspiracy to commit PWID, dealing in proceeds of unlawful activity, corrupt organizations, persons not to possess firearms, firearms not to be carried without a license, and criminal use of a communications facility and acquitted him of the three remaining charges. On November 12, 2020, the trial court sentenced Womack to an aggregate term of 39 to 90 years of imprisonment.

Womack filed post-sentence motions on November 23, 2020. The trial court granted Attorney Best's motion to withdraw and appointed Attorney Wesley Mishoe, who filed amended post-sentence motions on January 21, 2021. The trial court heard arguments on March 1, 2021 and denied the motions on March 22, 2021. This timely appeal followed. Womack and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Womack argues two issues on appeal:

A. Did the trial court err in denying Womack's motion to dismiss the charges in the [second case] under Rule 600 by inappropriately focusing its decision on whether the Commonwealth could have brought the charges in the [second case] when the First Criminal Complaint was filed?

   B. Did the trial court err in denying Womack the constitutional right to retain counsel of his own choosing when it denied his request for a continuance before trial began?

Womack's Brief at 5.

## III. Rule 600

Womack first challenges the trial court's denial of his motion to dismiss the second case under Rule 600. Our resolution of this issue hinges on whether the time calculation starts with the nine-count complaint in the first case (filed October 6, 2017) or the 28-count complaint in the second case (filed October 31, 2018). Simply put, if the trial court correctly identified the second complaint as "the complaint" for Rule 600 purposes, then Womack is not entitled to relief. If, instead, the Rule 600 clock started with the first complaint, then the outcome turns on the Commonwealth's due diligence during the 1,098 days between Womack's arrest and trial.

Rule 600 provides:

**(A) Commencement of Trial; Time for Trial**

> (1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

> (2) Trial shall commence within the following time periods.

>> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

*   *   *

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

\* \* \*

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600(A)(1), (A)(2)(a), (C)(1), (D)(1).[5]

We generally review Rule 600 issues for an abuse of discretion:

Our standard of review of a Rule 600 determination is whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will ... discretion is abused. Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party.

***Commonwealth v. Morgan***, 239 A.3d 1132, 1137 (Pa. Super. 2020)

(citation omitted).

Additionally, when we review a trial court's ruling under Rule 600,

_____

[5] Former Rule 1100 was amended and renumbered Rule 600 effective April 1, 2001. Former Rule 600 was rescinded, and current Rule 600 adopted effective July 1, 2013. Previously, the time to start trial for most cases was 180 days.

- 10 -

this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

**So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime.** In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Bethea***, 185 A.3d 364, 370 (Pa. Super. 2018) (citation omitted). Finally, for pure questions of law, our standard of review is *de novo*, and our scope of review is plenary. ***See Commonwealth v. Harth***, 252 A.3d 600, 614 n.13 (Pa. 2021).

## A. Trial Court's Analysis

The trial court considered the parties' arguments and prior cases addressing the choice between two complaints for Rule 600 purposes. Trial Court Opinion at 23–27 (citing, *inter alia*, ***Commonwealth v. Earp***, 382 A.2d 1215, 1216 (Pa. 1978), and ***Commonwealth v. Simms***, 500 A.2d 801 (Pa. 1985)). It also discussed jurisprudence surrounding 18 Pa.C.S.A. § 110, the mandatory joinder rule. ***Id.*** at 27–30 (citing ***Commonwealth v. Hude***, 458 A.2d 177 (Pa. 1983), which barred a subsequent prosecution after a trial for

charges arising from the same criminal episode, based on the same evidence, and charged at the same time). The trial court reasoned that the Rule 600 start date would depend on a compulsory joinder analysis, comparing the charges prosecuted in the second case with those charged in the first case:

> As illustrated by *Earp*, *Hude*, and *Simms*, the focus is properly on what charges the Commonwealth **could have** brought at the time the [first] complaint was filed, rather than what charges were actually brought. The question is therefore what offenses charged in the [second] case could have been charged in the [first case], based on the evidence that the Commonwealth had available to it on October 6, 2017. However, this is not simply a matter of comparing the criminal informations between the cases and omitting any common offenses, as advocated by Defendant. Rather, it requires analysis of the bases of each charge. If the charges in the [second] case have bases that are both: (1) independent of those that supported the [first case]; and (2) were not available to the Commonwealth at the time the complaint was filed in the [first case], then compulsory joinder does not apply, and the start date for Rule 600 purposes is the date the complaint was filed in the [second] case—October 31, 2018.

*Id.* at 32. Under this framework, the trial court analyzed each of the thirteen charges in the amended information to determine whether they could have been brought on October 6, 2017, the date of the first complaint. *Id.* at 32–34, Exh. A (table). Finding no joinder issue for any of the counts that resulted in conviction, the trial court used the date of the second complaint to determine the adjusted run date. *Id.* at 35–39. The trial court found no Rule 600 violation and therefore denied Womack's final Rule 600 motion. *Id.*

- 12 -

## B. Parties' Arguments

Womack argues that the Rule 600 time calculation should be based on the date of the first complaint because the Commonwealth was not diligent in prosecuting the first complaint and the earlier investigation was "assumed" into grand jury proceedings. Womack's Brief at 50–54. He submits that this method would ensure that the prosecution is timely and that the Commonwealth does not keep the first docket open as a "placeholder." *Id.* at 51–53. Here, Womack indicates that the Commonwealth did not exercise due diligence in prosecuting the first complaint and that that investigation was subsumed into the grand jury case. *Id.* at 57. Therefore, he asks this Court to recalculate the Rule 600 time limit based on the date of the first complaint— which served as the basis for the trial court's dismissal of the first case.

Womack disagrees with the method that the trial court used to select the date of the second complaint. Although he had advocated for a compulsory joinder analysis as an alternative to the trial court, he contends that this should not apply in the Rule 600 context. *Id.* at 48 n.13. Womack warns that the trial court's method hampers Rule 600 and causes confusion here and in future cases. Womack's Reply Brief at 6–8.

The Commonwealth argues that the trial court's Rule 600 determination was within its discretion. Commonwealth's Brief at 17–20. It indicates that there is no evidence that the prosecution in this case failed to exercise due diligence through the grand jury investigation, or that it filed the second complaint to evade the application of Rule 600. *Id.* at 20.

### C. Analysis

Rule 600 does not specify which start date to use when two complaints are filed against one defendant. Our courts have developed standards to make this determination.

Typically, cases with two complaints involve charges dismissed at a preliminary hearing, followed by a second complaint with the **same** charges. ***E.g.***, ***Commonwealth v. Genovese***, 425 A.2d 367, 369 (Pa. 1981). If the first complaint was properly dismissed, the second complaint generally provides the starting point for the calculation. ***Id.*** at 370 ("[O]nce the first complaint was dismissed, it became a nullity for all purposes, including Rule 1100."). However, if the Commonwealth tried to circumvent the Rule, then the first complaint starts the clock. ***See Commonwealth v. Whitaker***, 359 A.2d 174, 177 (Pa. 1976) (affirming dismissal where the Commonwealth tried to avoid the time limit by moving for *nolle prosequi* and then moving to vacate the *nolle prosequi*); ***Commonwealth v. Lynn***, 815 A.2d 1053, 1058 (Pa. Super. 2003) (finding a pretext to evade Rule 600 where the officer withdrew and refiled the same charges due to "time problems"). Additionally, if the Commonwealth did not exercise due diligence in prosecuting its first complaint, it does not get the benefit of the filing date of an identical second

complaint.  ***Commonwealth v. Meadius***, 870 A.2d 802, 808 (Pa. 2005).[6]

The Comment to Rule 600 summarizes:

> In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600.

Pa.R.Crim.P. 600, *Comment* (citing ***Meadius***, 870 A.2d 802).

An early variation occurred in ***Commonwealth v. Earp***, 382 A.2d 1215, 1216 (Pa. 1978).  The defendant was charged with murder, conspiracy, and other offenses.  At his preliminary hearing, the murder and conspiracy charges were dismissed, and the remaining charges were held for court.  ***Id.***  The Commonwealth then arrested the defendant again for the same murder and conspiracy, keeping him continuously confined between his first arrest and trial.  ***Id.*** at 1216, 1219.  Three Justices joined the lead opinion (Chief Justice Eagen concurred in the result without a separate opinion), holding:

---

[6] ***Meadius*** was based on then-applicable Rule 600(G), which required a diligence inquiry for any motion to dismiss: "If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant."  Pa.R.Crim.P. 600(G) (rescinded).

In Rule 600's current formulation, the sole reference to diligence is in the "computational instructions" of Section (C)(1).  ***See Harth***, 252 A.3d at 615.  Our Supreme Court has not decided any two-complaint cases since ***Meadius*** and under the current form of Rule 600.

Rule 1100(a)(2) and Rule 131(b)[7] make clear that the 180 day speedy trial period set forth by Rule 1100 begins to run on all charges arising out of a criminal transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction.

*Id.* at 1217; *accord Commonwealth v. Warren*, 459 A.2d 1285, 1287–89 (Pa. Super. 1983) (following *Earp* but finding waiver).

Our Supreme Court more fully addressed the treatment of a second complaint with **different** charges than the first complaint in *Commonwealth v. Simms*, 500 A.2d 801 (Pa. 1985). There, the Commonwealth filed a complaint charging the defendant with aggravated assault. *Id.* at 802. The victim then died, and the Commonwealth filed a second complaint charging the defendant with criminal homicide. *Id.* The Court held that because "events beyond the control of the prosecution have operated to change the nature of the offense for which a defendant is to be tried," the correct start date was that of the second complaint. *Id.* at 803–04. Although the first complaint had not been formally disposed of, the difference between the crimes charged in the first and second complaints negated any inference that the Commonwealth was attempting to avoid the speedy trial rule. *Id.*

Here, we find no abuse of discretion or error of law by the trial court, which applied settled jurisprudence to the unique facts of Womack's case. The

---

[7] Former Rule 131(b) is identical to present Rule 505(B): "When more than one offense is alleged to have been committed by one person arising from the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case."

- 16 -

trial court's focus on "what charges the Commonwealth **could have** brought" when the first complaint was filed comports with the language and purpose of Rule 600. Trial Court Opinion at 32. As noted above, Rule 600's dual purposes are to protect the interests of people who are accused of crimes and of society in ensuring timely prosecutions. **Bethea**, **supra**. The difference between the offenses charged in the complaints demonstrates that the Commonwealth did not try to circumvent Rule 600. **Cf. Simms**, 500 A.2d at 803–04. Therefore, Rule 600 should be construed consistently with society's interest in punishing and deterring crime. **Bethea**, **supra**. The trial court's assessment supports that balance—had the second complaint charged only offenses that could have been prosecuted on October 6, 2017, then the delay entailed would have violated Womack's rule-based right to a speedy trial.[8] We conclude that the trial court's selection of the second complaint date was within its discretion.

We further find no abuse of discretion in the trial court's Rule 600 calculation as applied to the time between the second complaint and the trial.[9] **See** Trial Court Opinion at 35–39. The delays caused by Womack and his counsel add up to 230 days. **Id.** Although the trial court's inclusion of 35

---

[8] Further distinguishing the plurality holding in **Earp**, we note that Womack was not continuously confined between his initial arrest and trial, although his actual period of release was brief. "[C]ontinuous confinement was the crucial factor in discharging [Earp]." **Genovese**, 425 A.2d at 370 n.11 (quoting **Commonwealth v. Cartagena**, 393 A.2d 350, 357 (Pa. 1978)).

[9] Ordinarily, a defendant waives a Rule 600 argument on appeal if he does not account for which time he thinks should have run against the Commonwealth. **Commonwealth v. Martz**, 232 A.3d 801, 811 (Pa. Super. 2020). Womack concentrated instead on which complaint date controls.

days of "judicial delay" would no longer apply under **Harth**, this is not dispositive, as this period was soon subsumed by the emergency suspension of Rule 600 beginning March 16, 2020. **See In re General Statewide Judicial Emergency**, 230 A.3d 1015, 1019 (Pa. 2020); **20th Judicial District Fifth Extended Declaration of Judicial Emergency**, 33 MM 2020, at 2 (Pa. Dec. 30, 2020).

We observe that Rule 600 worked in Womack's favor when the trial court granted his motion to dismiss the first case. We are skeptical of the Commonwealth's tactics in leaving that case open despite not intending to prosecute it. However, because the charges from the second complaint could not have been brought at the time of the first complaint, we find the Commonwealth's diligence in prosecuting the first complaint to be irrelevant in the Rule 600 calculation in this case. **Cf. Meadius**, 870 A.2d at 803 (interpreting former Rule 600(G) where the Commonwealth withdrew a complaint and then filed a second complaint listing identical charges). Rather, Rule 600 applies to the charges in the second complaint based on the date of the second complaint. "Rule 600 is not the appropriate mechanism by which to grant [Womack] redress on these facts." Trial Court Opinion at 51. Therefore, we deny relief on Womack's first issue.

## IV. Continuance

Womack next challenges the denial of his motion to continue made immediately prior to trial. He argues that the trial court did not properly

consider the factors articulated in **Commonwealth v. Prysock**, 972 A.2d 539

(Pa. Super. 2009), which resulted in the denial of his Pennsylvania and federal

constitutional rights to counsel of his choosing.  Womack's Brief at 58–64.

> It is well-settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court. Further, a trial court's decision to deny a request for a continuance will be reversed only upon a showing of an abuse of discretion.  As we have consistently stated, an abuse of discretion is not merely an error of judgment.  Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record . . . .

**Commonwealth v. Hernandez**, 230 A.3d 480, 484 (Pa. Super. 2020)

(quoting **Prysock**, 972 A.2d at 541).  A defendant's constitutional right to hire

counsel of choice "is not absolute":

> Rather, the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice.  Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.  At the same time, however, we have explained that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

**Id.** (quoting **Commonwealth v. McAleer**, 748 A.2d 670, 673–74 (Pa.

2000)).

> In this context, we consider the following factors:
>
> (1) whether the court conducted an extensive inquiry into the underlying causes of defendant's dissatisfaction with current counsel; (2) whether the defendant's dissatisfaction with current

counsel constituted irreconcilable differences; (3) the number of prior continuances; (4) the timing of the motion for continuance; (5) whether private counsel had actually been retained; and (6) the readiness of private counsel to proceed in a reasonable amount of time.

*Commonwealth v. Broitman*, 217 A.3d 297, 300 (Pa. Super. 2019) (citing *Prysock*, 972 A.2d at 543).

Womack protests that the trial court failed to conduct an "extensive inquiry" into his dissatisfaction with Attorney Best. Womack's Brief at 61–62. However, the day of trial was not the first time the court had addressed Womack's dissatisfaction with counsel. Ten months earlier, on December 26, 2019, Womack had filed a *pro se* motion to waive counsel or for new appointed counsel. This was based on Womack's dissatisfaction with Attorney Best's litigation of the Rule 600 issue. The court addressed Womack's *pro se* motion on January 13, 2020, at which time Womack elected to proceed with Attorney Best. Furthermore, on the day of trial, counsel did not mention any dissatisfaction in his motion to continue; rather, Womack wanted a continuance because he could then afford to hire private counsel. Given these facts, we find neither a lack of inquiry by the trial court nor irreconcilable differences between Womack and Attorney Best.

Nor do any of the other *Prysock* factors weigh against the trial court's discretion in denying Womack's motion. The case had been continued numerous times by Womack and his counsel. This included a continuance from the scheduled January 13, 2020 jury selection to address Womack's own motion to proceed *pro se* or for new appointed counsel. Although the trial

court indicated that counsel had mentioned the motion earlier in the week, there was never a written motion prior to the oral motion made the morning of trial. *Cf. Broitman*, 217 A.3d at 300–01 (finding denial of a continuance request on the eve of trial to be within discretion). Finally, there was no indication that private counsel had actually been retained. *Compare Commonwealth v. Novak*, 150 A.2d 102, 109–10 (Pa. 1959) (finding no constitutional violation where new counsel had not been retained), *with Commonwealth v. Rucker*, 761 A.2d 541, 543 (Pa. 2000) (finding an abuse of discretion to deny a defendant's request to proceed with private counsel who had been retained, was familiar with the case, and was ready to proceed immediately without any continuance).

From our review of the record, we find that the trial court properly weighed Womack's right to counsel of his choice against the Commonwealth's interest in efficient administration of justice. Therefore, we conclude that the trial court did not abuse its discretion in denying Womack's motion to continue trial.

## V. Conclusion

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/29/2022